UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DEREK KLINE,

                Plaintiff,

v.

RANDEE REWERTS et al.,

                Defendants.

_____/

Case No. 1:24-cv-1103

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Corizon Inc. and Rewerts.[1] The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Gator, White, Palmer, Baubit,

---

[1] Defendant Rewerts is named as "Warden Unknown Rewerts" in the complaint; however, the Court will refer to Defendant as Defendant Rewerts. (Compl., ECF No. 1, PageID.2.)

and Unknown Party #1: (i) official capacity claims; (ii) Eighth Amendment failure to protect claim against Defendant Baubit; (iii) Eighth Amendment medical care claims against Defendants Gator and White; and (iv) unspecified state law claims. The following claims against Defendants Gator, White, Palmer, Baubit, and Unknown Party #1 in their individual capacities remain in the case: (i) First Amendment retaliation claim against Defendant Gator; (ii) Eighth Amendment excessive force claims against Defendants Gator and White; and (iii) Eighth Amendment medical care claims against Defendants Baubit, Palmer, and Unknown Party #1. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.9) will be denied.

## <u>Discussion</u>

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Corizon Inc. and the following DRF staff: Warden Randee Rewerts; Corrections Officers Unknown Gator and Unknown White; Sergeant Unknown Palmer; Registered Nurse Unknown Baubit; and Unknown Party #1, named as "MAT Nurse" "Jane Doe 1." (Compl., ECF No. 1, PageID.2.) Plaintiff sues Defendants in their official and individual capacities. (*Id.*)

In Plaintiff's complaint, he alleges that on April 25, 2024, he "was released from Carson City Hospital diagnosed with a 20 mm gallstone with instructions to alert healthcare [at DRF] if his condition worsened so he could be returned for surgery."[2] (*Id.*, PageID.3.) Two days later, on

---

[2] In this Opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

April 27, 2024, Plaintiff "woke to the worst pain he had ever felt in his life." (*Id.*) At 7:00 a.m., "Plaintiff began yelling out of his cell door for help and pushing the emergency call button but was ignored by staff." (*Id.*) Thirty minutes later, Plaintiff's cell was opened to allow the porters to pass out breakfast, and Plaintiff "went to the officers' desk" and informed Defendant White and two non-party corrections officers "that he needed an ambulance." (*Id.*) Plaintiff was written "a travel pass," so that he could go to healthcare. (*Id.*, PageID.4.)

Upon arrival at healthcare, Plaintiff told Defendant Gator, a corrections officer, "that his gallstone condition [had] advanced" and that he "need[ed] an ambulance" because his "stomach hurt[] so bad" and he had chest pains. (*Id.*) Defendant Gator told Plaintiff "to be seated and [Gator] would inform healthcare staff." (*Id.*) Plaintiff states that he "sat for about 30 minutes groaning in pain and in tears." (*Id.*) Plaintiff stopped an unnamed, non-party nurse and told the nurse about his gallstone, and the nurse "replied, 'give me a second and I'll figure out what's going on.'" (*Id.*)

Approximately, one or two minutes later, Defendant Baubit came and gave Plaintiff a healthcare request form to complete. (*Id.*) Defendant Baubit told Plaintiff that "the form had to be filled out and signed before [Baubit] could provide services." (*Id.*) In response, Plaintiff told Defendant Baubit "that he was in severe pain, stating: 'my stomach hurts so bad and I'm having chest pains. This is an emergency! I cannot breathe. I feel like I'm dying; call me an ambulance please." (*Id.*) Defendant Baubit stated: "a gallstone that big is gonna [sic] hurt, but not so bad you can't fill out the form. You should have had it taken care of when you had the chance." (*Id.*, PageID.5.) Plaintiff then completed the form, and asked Defendant Baubit "why are you giving me such a hard time? You know about my condition. I was told to come back if it got worse and I'd be sent out for surgery. It's so much worse; please call an ambulance." (*Id.*)

Defendant Baubit stated that he would take Plaintiff's vitals and "that [would] tell him all [he] need[ed] to know." (*Id.*) In response, Plaintiff said that he was "telling [Baubit] what [Baubit] need[ed] to know" and that Plaintiff had "never felt pain like this." (*Id.*) Defendant Baubit "then accused Plaintiff of 'playing games' and said 911 wasn't needed." (*Id.*) In response, Plaintiff asked: "why are you being such an asshole; just call an ambulance." (*Id.*)

Defendant Baubit "then snatched the oxygen reader off of Plaintiff's finger and stated, 'since I'm such an asshole you can leave healthcare now!'" (*Id.*) Plaintiff said: "Help me I'm dying!" (*Id.*) Defendant Baubit replied: "Somewhere other than health services for all I care. And I'll be informing the rest of the staff you're playing games and you won't be going out." (*Id.*) Plaintiff asked to speak with a supervisor, and Defendant Baubit "became angry" and again "demanded that Plaintiff leave." (*Id.*, PageID.6.) "Plaintiff remained seated groaning in pain" and asked Defendant Gator to call a supervisor and 911. (*Id.*) Defendant Baubit said: "No! Mr. Kline is finished in healthcare and needs to leave now or you can remove him." (*Id.*) Defendant Gator then gave Plaintiff a direct order to leave healthcare and to return to his unit. (*Id.*) Plaintiff replied "that he was in too much pain to leave and to call 911." (*Id.*) Defendant Gator responded: "If you don't leave, you'll be in a lot more pain." (*Id.*)

Thereafter, Defendant White arrived, and Defendant Baubit said: "if he doesn't leave, beat his ass; he's got a mouth on him." (*Id.*) Plaintiff alleges that "without warning, both officers grabbed Plaintiff out of his chair and slammed him on the ground onto his stomach." (*Id.*) Plaintiff further alleges that as he "was slammed, [Defendants] Gator and White punched him in the stomach and ribs with fists, and dropped knees into his back with all of their body weight." (*Id.*) Plaintiff states that he "offered zero resistance." (*Id.*) Plaintiff further states that as a result of this

interaction, Defendant Gator wrote Plaintiff "a misconduct charging Plaintiff with staff assault as retaliation for asking for a supervisor and to cover up their assault on Plaintiff." (*Id.*, PageID.9.)

As the officers "dragged Plaintiff away to segregation," Plaintiff heard Defendant Baubit "say, 'how would you rate your pain now?'" (*Id.*, PageID.6.) Plaintiff was then left "on the floor" in "a temporary 'dog cage' cell" "handcuffed behind his back" for hours "begging anyone who passed for help." (*Id.*) Plaintiff states that he went "in and out of consciousness from the infections and pain he was suffering from." (*Id.*)

At approximately 12:30 p.m., Defendants Palmer and Unknown Party #1 approached the segregation cage where Plaintiff was being held. (*Id.*, PageID.7.) "Plaintiff told them he needed help." (*Id.*) Defendant Palmer stated: "Looks like Kline is dope sick. These junkies really put a show on to get a fix don't they." (*Id.*) Plaintiff responded: "I am dying please help me or call an ambulance." (*Id.*)

Plaintiff states that he was in the segregation cage for over six hours "during which he begged everyone who came by for help." (*Id.*) Defendant Palmer "returned several times and all he did was give Plaintiff orders to return to his unit and threatened to drag him back to his unit if he didn't leave the segregation cage." (*Id.*) Subsequently, at approximately 3:00 p.m., four unnamed, non-party nurses "came to the cage and began immediately to initiate urgent care to include calling an ambulance." (*Id.*) Plaintiff states that his temperature was 107 degrees, and he "was suffering from gangrene and sepsis, which was visible in his skin." (*Id.*) Plaintiff was transported to the hospital, and he received emergency surgery. (*Id.*) "The doctor told Plaintiff that his condition would probably be fatal if left any longer without care." (*Id.*)

Plaintiff claims that "staff at DRF have customs that refuse medical treatment to inmates they decide are playing games and for retaliating for any type of complaints." (*Id.*) Plaintiff further

claims that Defendant Rewerts "was responsible for staffing the facility, enforcing policy and procedure and . . . preventing customs from being created by staff's actions that violate state laws and the U.S. Constitution." (*Id.*, PageID.8.) Additionally, Plaintiff alleges that Corizon Inc. "contracts with the MDOC to provide all of the healthcare employees and that the employees they provide to [sic] abide by their ethics as well as state and constitutional laws especially those that affect the lives and safety and health of inmates under their care." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that his rights under the First Amendment, Eighth Amendment, and state law were violated. (*Id.*, PageID.8–9.) Plaintiff seeks compensatory and punitive damages, as well as "declaratory and injunctive relief as deemed necessary." (*Id.*, PageID.9.)

## II.    Request for the Appointment of Counsel

In Plaintiff's complaint, he requests the appointment of counsel. (ECF No. 1, PageID.9.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Therefore, Plaintiff's request for the appointment of counsel will be denied.

6

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **Defendant Corizon Inc.**

Plaintiff names Corizon Inc. as a Defendant. (Compl., ECF No. 1, PageID.2.) The requirements for a valid § 1983 claim against a municipality apply equally to private corporations, such as Corizon Inc., that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same). "Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). Consequently, Corizon Inc.'s liability, like a municipality's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's constitutional] rights." *Starcher*, 7 F. App'x at 465. Additionally, Corizon Inc.'s liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated." *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff's only allegation regarding Corizon Inc. is that Corizon Inc. "contracts with the MDOC to provide all of the healthcare employees and that the employees they provide to abide by their ethics as well as state and constitutional laws." (Compl., ECF No. 1, PageID.8.) Plaintiff also alleges in a conclusory manner that "staff at DRF have customs that refuse medical treatment to inmates they decide are playing games and for retaliating for any type of complaints." (*Id.*, PageID.7.)

However, despite Plaintiff's conclusory assertions, Plaintiff's allegations against Corizon Inc. essentially rest on a theory of vicarious liability and therefore do not state a claim. Although Plaintiff uses the word "customs" in his allegations and alleges in a conclusory manner that "staff at DRF have customs that refuse medical treatment to inmates they decide are playing games and for retaliating for any type of complaints," Plaintiff fails to allege sufficient facts to support his conclusory assertion. To show that a governmental entity or medical provider that contracts with the state has an unlawful custom, a plaintiff must show the existence of "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff uses the word "custom," however, his factual allegations do not show a widespread pattern. Further, to the extent that Plaintiff intended to suggest such a pattern,

conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (2007).

Therefore, because Plaintiff fails to allege sufficient *facts* to show the existence of a policy or custom, he necessarily fails to show that any policy or custom was the moving force behind his alleged constitutional injuries. *Cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, for the reasons set forth above, Plaintiff fails to state a claim against Corizon Inc.

### B.    Official Capacity Claims Against Individual Defendants

Plaintiff sues Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In this case, the individual Defendants are either employed by the MDOC or the medical provider that contracts with the state to provide medical care in prisons, which Plaintiff identifies as Corizon Inc.

As to the Defendants employed by the MDOC, the states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has

specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages and unspecified injunctive and declaratory relief. (Compl., ECF No. 1, PageID.9.) However, an official capacity defendant who is employed by the state is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). And, as noted above, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff fails to state a claim upon which relief may be granted as to his monetary damages claims against the Defendants employed by the MDOC in their official capacities.

Although damages claims against state official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102.

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at DRF, which is where he avers that the DRF Defendants are employed. Thus, Plaintiff cannot maintain his claims for declaratory and injunctive relief against the DRF Defendants.

Moreover, as to any Defendants employed by the medical provider that contracts with the state to provide medical care in prisons, which Plaintiff identifies as Corizon Inc., the Court has already concluded that Plaintiff has failed to set forth any plausible claims against Corizon Inc. because he has failed to allege sufficient facts to describe any policy or custom maintained by

Corizon Inc. that resulted in his injuries. For that same reason, Plaintiff's official capacity claims against any Defendants employed by Corizon Inc. will be dismissed.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

### C.    Individual Capacity Claims Against Defendant Rewerts

As to Plaintiff's individual capacity claims against Defendant Rewerts, Plaintiff's only allegation against Rewerts is as follows: Defendant Rewerts "was responsible for staffing the facility, enforcing policy and procedure and . . . preventing customs from being created by staff's actions that violate state laws and the U.S. Constitution." (Compl., ECF No. 1, PageID.8.) This conclusory allegation is insufficient to show that Defendant Rewerts was personally involved in the alleged violations of Plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Instead, Plaintiff seeks to hold Defendant Rewerts liable due to his supervisory position. However, government officials, such as Defendant Rewerts, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because

a supervisor denied an administrative grievance or failed to act based upon information contained

in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*,

995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Rewerts encouraged or

condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in

their conduct. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to

show that Defendant Rewerts was personally involved in the alleged violations of Plaintiff's

constitutional rights. Therefore, Plaintiff's individual capacity claims against Defendant Rewerts

will be dismissed.

### D.    Individual Capacity Claims Against Defendants Gator, White, Palmer, Baubit, and Unknown Party #1

Plaintiff avers that his rights under the First Amendment and the Eighth Amendment were

violated. (Compl., ECF No. 1, PageID.8–9.) Based on the allegations in the complaint, the Court

construes Plaintiff's complaint to raise (i) a First Amendment retaliation claim against Defendant

Gator, (ii) Eighth Amendment excessive force claims against Defendants Gator and White, (iii) an

Eighth Amendment failure to protect claim against Defendant Baubit, and (iv) Eighth Amendment

14

medical care claims against Defendants Gator, White, Palmer, Baubit, and Unknown Party #1.[3] The Court addresses each claim in turn below.

### 1.    First Amendment Retaliation Claim Against Defendant Gator

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that on April 27, 2024, after Plaintiff had asked Defendant Gator to call a supervisor, Defendant Gator used excessive force against Plaintiff and wrote Plaintiff "a misconduct charging Plaintiff with staff assault as retaliation for asking for a supervisor and to cover up the[] assault on Plaintiff." (Compl., ECF No. 1, PageID.6, 9.) At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true. Although Plaintiff has not proven his First Amendment retaliation claim against Defendant Gator, the Court will not dismiss this claim on initial review.[4]

---

[3] To the extent that Plaintiff intended to allege any other claims, other than those listed herein, any other claim would be subject to dismissal because Plaintiff fails to allege sufficient facts to state any additional claims.

[4] The Court notes that the fact that Plaintiff believes that the misconduct was written, in part, to "cover up the[] assault on Plaintiff" does not, on its own, show retaliation because retaliation requires that protected conduct precede the alleged retaliatory action. (Compl., ECF No. 1, PageID.9.)

2. **Eighth Amendment Excessive Force Claims Against Defendants Gator and White**

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided

16

that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff alleges that after he had been ordered to leave healthcare, "without warning, both officers grabbed Plaintiff out of his chair and slammed him on the ground onto his stomach." (Comp., ECF No. 1, PageID.6.) Plaintiff further alleges that as he "was slammed, [Defendants] Gator and White punched him in the stomach and ribs with fists, and dropped knees into his back with all of their body weight." (*Id.*) Plaintiff states that he "offered zero resistance." (*Id.*)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Accordingly, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendants Gator and White on initial review.

### 3.    Eighth Amendment Failure to Protect Claim Against Defendant Baubit

To show liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

An officer or other prison official is liable for another prison official's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

Here, Plaintiff alleges that after Defendant Baubit, a nurse, had told Plaintiff to leave healthcare, Defendant Gator then gave Plaintiff a direct order to leave healthcare and to return to his unit. (Compl., ECF No. 1, PageID.6.) In response, Plaintiff stated "that he was in too much pain to leave and to call 911." (*Id.*) Defendant Gator stated: "If you don't leave, you'll be in a lot more pain." (*Id.*) Thereafter, Defendant White arrived, and Defendant Baubit said: "if he doesn't leave, beat his ass; he's got a mouth on him." (*Id.*) Plaintiff alleges that "without warning, both officers grabbed Plaintiff out of his chair and slammed him on the ground onto his stomach." (*Id.*) Plaintiff further alleges that as he "was slammed, [Defendants] Gator and White punched him in the stomach and ribs with fists, and dropped knees into his back with all of their body weight." (*Id.*)

As an initial matter, although Plaintiff alleges that Defendant Baubit said that "if [Plaintiff] doesn't leave, beat his ass; he's got a mouth on him," allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam). Allegations of verbal

harassment also do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Moreover, although Plaintiff alleges that Defendants Gator and White "without warning," "grabbed" and "slammed him on the ground" after Defendant Baubit's statement, even assuming that Defendant Baubit "had reason to know that excessive force would be" used by Defendants Gator and White at some point, Plaintiff fails to provide any allegations from which the Court could conclude that Baubit "had both the opportunity and the means to prevent the harm from occurring." *Burgess*, 735 F.3d at 475 (quoting *Turner*, 119 F.3d at 429). Plaintiff's allegations suggest that the alleged use of force occurred suddenly and "without warning." (Compl., ECF No. 1, PageID.6.) The Sixth Circuit has held that "where the 'act of excessive force unfolds in a matter of seconds, the second requirement [i.e., having both the opportunity and the means to prevent the harm] is generally not satisfied.'" *Alexander*, 733 F. App'x at 265 (quoting *Pennington v. Terry*, 644 F. App'x 533, 548 (6th Cir. 2016)); *see Ontha v. Rutherford Cnty.*, 222 F. App'x 498, 506 (6th Cir. 2007) (collecting cases). The Sixth Circuit's reasoning for this determination is "that it demands too much of officers to require that they intervene within a sudden and quickly-expired moment of opportunity." *Pennington*, 644 F. App'x at 548 (citing *Ontha*, 222 F. App'x at 506).

Here, Plaintiff fails to allege facts suggesting that the incident with Defendants Gator and White lasted long enough for Defendant Baubit, a medical provider, to both perceive what was going on and intercede to stop the officers' alleged use of force. Accordingly, for the reasons set

forth above, Plaintiff's Eighth Amendment failure to protect claim against Defendant Baubit will be dismissed.

### 4.    Eighth Amendment Medical Care Claims Against Defendants Gator, White, Palmer, Baubit, and Unknown Party #1

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle*, 429 U.S. at 104; *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702. Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff alleges that he was denied medical treatment despite the severe pain he was experiencing as a result of his gallstone. (*See, e.g.*, Compl., ECF No. 1, PageID.3–7.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

With respect to the subjective component, as to Defendants Gator and White, both of whom Plaintiff identifies as corrections officers, not medical professionals, as explained below, the Court concludes that Plaintiff fails to state an Eighth Amendment medical care claim against them. Specifically, Plaintiff first alleges that upon Plaintiff's arrival in healthcare, Defendant Gator told Plaintiff to take a seat and that Gator "would inform healthcare staff." (*Id.*, PageID.4.) Although Plaintiff alleges that he "sat for about 30 minutes groaning in pain and in tears," Plaintiff does not allege that Defendant Gator did not inform healthcare staff of Plaintiff's presence. (*Id.*) Furthermore, although Plaintiff alleges that Defendants Gator and White were present when Plaintiff interacted with Defendant Baubit (a nurse), non-medical personnel, such as Defendants Gator and White, who have no training or authority to supervise healthcare officials, are entitled to rely on medical provider's judgment and cannot be held liable for healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). Under these circumstances, the facts alleged by Plaintiff do not support an

inference that Defendants Gator and White, both of whom Plaintiff identifies as corrections officers, acted with deliberate indifference. Accordingly, for the reasons set forth above, Plaintiff fails to state an Eighth Amendment medical care claim against Defendants Gator and White.

As to Defendants Baubit and Unknown Party #1, Plaintiff alleges that these medical providers were aware of Plaintiff's condition, but they did not provide him with any medical treatment. (*See, e.g.*, Compl., ECF No. 1, PageID.4–7.) Further, with respect to Defendant Palmer, although Palmer is not a medical provider, Plaintiff alleges that Defendant Palmer came to the segregation cage where Plaintiff was being held on April 27, 2024, "several times" and that Plaintiff had told Palmer that he was dying and to "call an ambulance." (*Id.*, PageID.7.) Plaintiff alleges that Defendant Palmer ultimately took no action to seek medical attention for Plaintiff. (*See id.*) Under these circumstances, although Plaintiff has by no means proven his Eighth Amendment medical care claims against Defendants Baubit, Palmer, and Unknown Party #1, the Court will not dismiss these claims on initial review.

### E.    State Law Claims

Plaintiff also claims that Defendants violated state law. (Compl., ECF No. 1, PageID.8.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Furthermore, although Plaintiff references alleged violations of state law in his complaint, Plaintiff fails to identify any specific state law claims that he intends to raise against Defendants. (*See* Compl., ECF No. 1, PageID.8 (stating only that Defendants "violated local and state laws").) Under these circumstances, Plaintiff fails to state any state law claims against Defendants.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2), and the Court will deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.9). Having conducted the review required by the PLRA, the Court determines that Defendants Corizon Inc. and Rewerts will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Gator, White, Palmer, Baubit, and Unknown Party #1: (i) official capacity claims; (ii) Eighth Amendment failure to protect claim against Defendant Baubit; (iii) Eighth Amendment medical care claims against Defendants Gator and White; and (iv) unspecified state law claims. The following claims against Defendants Gator, White, Palmer, Baubit, and Unknown Party #1 in their individual capacities remain in the case: (i) First Amendment retaliation claim against Defendant Gator; (ii) Eighth Amendment excessive force claims against Defendants Gator and White; and (iii) Eighth Amendment medical care claims against Defendants Baubit, Palmer, and Unknown Party #1.

An Order consistent with this Opinion will be entered.


Dated:    November 26, 2024                    /s/ Jane M. Beckering
                                               Jane M. Beckering
                                               United States District Judge