UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DEREK KLINE #765850, | Case No. 1:24-cv-01103 |
| Plaintiff, | Hon. Jane M. Beckering<br>U.S. District Judge |
| v. | |
| RANDEE REWERTS, et al., | |
| Defendants. | |
| _____/ | |

# REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R. & R.) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies. (ECF No. 16.)  Plaintiff has not responded.

State prisoner Derek Kline filed a verified complaint under 42 U.S.C. § 1983 on October 21, 2024. (ECF No.1.)  Four named Defendants remain in the case. They are Corrections Officer (CO) Gator[1], CO White Registered Nurse (RN) Baubit[2], and Sergeant (Sgt.) Palmer.  In addition, Kline asserts claims against Unknown Party RN Jane Doe.  Kline asserts First and Eighth Amendment claims relating to events at Carson City Correctional Facility on April 27, 2024.  In a screening opinion, the Court summarized Kline's remaining claims as follows:

---

[1]  Defendants refer to Defendant Gator as Gaiter.
[2]  Defendants refer to Defendant Baubit as Babbitt.

(1) an Eighth Amendment claim alleging that Defendants Corrections Officer (CO) Gator and CO White violated his rights by using excessive force,

(2) an Eighth Amendment claim alleging that Defendants Registered Nurse (RN) Baubit, Sergeant (Sgt.) Palmer and Unknown Party RN Jane Doe violated his rights by failing to provide him with timely medical care and treatment, and

(3) a First Amendment claim alleging that Defendant CO Gator violated his First Amendment rights by issuing him a retaliatory misconduct ticket.

(ECF No. 6, PageID.37 (Opinion).)

Defendants argue that Plaintiff failed to exhaust his administrative remedies against them. The undersigned respectfully recommends that the Court dismiss this complaint because Defendants have established that there exists no genuine issue of material fact on the issue of exhaustion of administrative remedies.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one

---

[3] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). However, when the exhaustion issue is intertwined with the merits of a claim,

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

---

the Seventh Amendment requires a jury trial on the exhaustion issue. *Richards v. Perttu*, _U.S. _, 2025 WL 1698783 (June 18, 2025).

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

4

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective September 25, 2023) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ W, CC. The inmate submits the

5

grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ CC. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ JJ. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ NN. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ OO.[4]

---

[4]    As of September 25, 2023, MDOC Policy Directive 03.02.130 at ¶¶ P 9 and P11 states that prisoners wishing to purse claims that misconducts tickets were retaliatory "must file a grievance on the sole issue of retaliation and it shall not be rejected as a grievance on the hearing decision." (ECF No. 17-2, PageID.115.)

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to

7

>this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).

**IV. Analysis**

Defendants argue that Kline submitted two relevant grievances through Step III of the administrative process. They are: **DRF 24-5-1200-28e** and **DRF 24-5-1200-28e**. Defendants assert that these grievances were not properly exhausted because they were rejected at each Step of the grievance process. As discussed below, **DRF 24-5-1200-28e** was rejected because it raised multiple issues, and **DRF 24-5-1200-28e** was rejected as untimely.

As an initial matter, it should be noted that these grievances listed an incident date of April 27, 2024. (ECF No. 1-1, PageID.13, 14.) On both grievances, Kline indicated that the date he was writing the grievance was May 5, 2024. (*Id*.) However, both Step I grievances are stamped May 21, 2024. (*Id*.) In addition, as shown below, the MDOC's Prisoner Grievance Summary Report indicates that these grievances were received on May 21, 2024.

### Prisoner Grievance Summary[11] Report

| Grievance | Number | Name | Facility | Issue | I Recd | I Dec | II Recd | II Dec | III Recd | III Dec |
|---|---|---|---|---|---|---|---|---|---|---|
| 20241200 | 765850 | KLINE | DRF | 28C | 5/21/2024 | x | 7/11/2024 | x | 8/28/2024 | x |
| 20241201 | 765850 | KLINE | DRF | 28E | 5/21/2024 | x | 7/11/2024 | x | 8/28/2024 | x |

(ECF No. 17-4, PageID.136.)

Kline has failed to file a response to Defendants' motion for summary judgment. In addition, his verified complaint does not address exhaustion. However, Kline included copies of these same two grievances as an attachment to his complaint. (ECF No. 1-1.) As set forth above, when a party fails to respond to a motion for summary judgment, the Court must first determine whether the movant's motion for summary judgment shows that no genuine issue of material fact exists entitling the movant to summary judgment. *Stough*, 138 F.3d at 614. In the opinion of the undersigned, Defendants have met this burden.

In grievance **DRF 24-5-1200-28e**, Kline grieved Defendant RN Baubit for failing to provide him with medical care and treatment, using inappropriate language, causing him to be assaulted by other officers, placed in segregation, and thrown on the segregation floor. (ECF No. 17-4, PageID.137.) The grievance was rejected because it contained multiple unrelated issues, and the rejection was affirmed at Step II and Step III. (*Id.*, PageID.139 (Step II response); ECF No. 17-3, PageID.128 (Step III response).)

The Supreme Court held in *Woodford* that the PLRA exhaustion requirement requires "proper exhaustion." 548 U.S. at 92−93. "Proper exhaustion" requires that the plaintiff comply with the administrative agency's deadlines and "critical procedural rules." *Id.* at 90−95. Failure to comply with the administrative agency's procedural rules may result in rejection of the grievance by the Grievance Coordinator. PD 03.02.130 ¶ P(1−15). "[W]here a grievance has been properly rejected by the prison for noncompliance [with procedural rules], a court may

9

conclude that the plaintiff failed to exhaust his administrative remedies." *Nettles v. Edgar*, No. 1:22-cv-119, 2022 WL 16556063, at *3 (W.D. Mich. Sept. 22, 2022), *report and recommendation adopted*, No. 1:22-cv-119, 2022 WL 16551462 (W.D. Mich. Oct. 31, 2022); *see also Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 891 n.3 (6th Cir. 2009) (holding that a grievance rejected as vague did not satisfy the exhaustion requirement).

The MDOC prohibits inmates from submitting grievances in a manner that "is vague, illegible, or contains multiple *unrelated* issues." PD 03.02.130, ¶ P(1) (emphasis added). Courts in this district have interpreted the phrase "multiple unrelated issues" in P.D. 03.02.130 to align with "its ordinary meaning: multiple disputes, concerns, or problems that are not connected or associated." *Nettles*, 2022 WL 16556063, at *4 (internal quotations omitted).

Although Kline has not provided a response to Defendants' motion for summary judgment, he did appeal this rejection at Steps II and III. But his appeals failed to address the multiple-issues problem identified by the MDOC. (*Id.*, PageID.129.) A review of Kline's Step I grievance confirms that Kline raised multiple issues in his Step I grievance including allegations regarding "humane treatment and living conditions", inappropriate comments allegedly made by Nurse Baubit including an order to leave healthcare, a subsequent assault by "officers", and then placement in segregation "in lieu of medical treatment." (ECF No. 17-3, PageID.131.) The rejection of Kline's Step I grievance for containing multiple issues appears justified.

Kline also submitted grievance **DRF 24-5-1201-28c**, naming Sgt. Palmer and CO White and asserting that while Kline suffered with gallstones, the officers assaulted him and left him on the segregation floor for six hours before he received emergency surgery. (ECF No. 17-4, PageID.140.) Kline's grievance was rejected as untimely and the rejection was upheld at Step II and Step III. (ECF No. 17-4, PageID.142 (Step II response); *Id.*, PageID.134 (affidavit of Grievance Coordinator Becher noting a scrivener's error in the date the Step I grievance was received. The correct date was 5/21/2024, not 5/1/2024); ECF No. 17-3, PageID.124 (Step III response).)

With respect to **DRF 24-5-1201-28c**, the rejection also appears to be justified. Kline is grieving events on April 27, 2024. Pursuant to MDOC Policy Directive 03.02.130, Kline had 5 business days to file this grievance. (ECF No. 17-2, PageID.117 (MDOC PD 03.02.130, ¶ CC).) The Step I grievance form provided by Kline as an attachment to his complaint indicates that it was "shipped" on May 21, 2024. (ECF No. 1-1, PageID.14.) This is well after Kline's deadline to submit his grievance.

Furthermore, even adding in time to account for Kline's medical emergency, this grievance was late. At Step II, Kline explained that he was rushed into emergency surgery on April 27 and hospitalized until May 1. (*Id.*) He says that he wrote the grievance two days later and turned it in to his "ASAT teacher" on May 6. (*Id.*) As noted above, the MDOC's Prisoner Grievance Summary Report for Kline indicates that this grievance was received on May 21, 2024. According to MDOC

11

Policy Directive 03.02.130, grievances are considered filed on the date they are received by the Department and must be stamped as such. (ECF No. 17-2, PageID.117 (PD 03.02.130, ¶Z).) Even giving Kline the benefit of the doubt due to his medical condition, he filed his Step I grievance well after 5 business. Thus, this rejection was proper.

In summary, Kline's grievances were not properly exhausted because they were rejected. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Grievances that are rejected are not reviewed on the merits and thus do not satisfy the exhaustion requirement.

In the opinion of the undersigned, Kline's failure to exhaust his administrative remedies by properly submitting a grievance against each Defendant through each Step of the MDOC grievance requires dismissal of this case.[5]

---

[5] Kline never submitted a grievance that named Defendants CO Gator or the unknown party identified as an RN. The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596. An inmate must name each defendant in a properly exhausted grievance before he files a federal complaint. *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee"). Where a prisoner fails to name a Defendant in his Step I grievance, or mentions an individual is involved for the first time during the Step III appeal of the denial of a grievance, the claim against that individual is not properly exhausted. *Id.* at *6.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment and dismiss the remaining Defendants without prejudice due to Kline's failure to exhaust his administrative remedies.[6]

Dated:  August 5, 2025                    /s/ *Maarten Vermaat*
                                          MAARTEN VERMAAT
                                          U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[6]   It is recommended that the Court dismiss without prejudice the unserved unknown party RN Jane Doe for two reasons.  First, as explained above, Kline did not name an unknown RN in a properly exhausted grievance.  "[T]he Court may nonetheless dismiss the claims *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The Court explained that this is especially so where the claims against non-appearing defendants are the same as those against appearing-defendants."  *Coleman v. Snyder*, No. 17-11730, 2018 WL 4103364, at *2 (E.D. Mich. Aug. 29, 2018).  Second, RN Jane Doe may be dismissed without prejudice under Fed. R. Civ. P. 4(m).  Rule 4(m) provides that the Court must, after providing plaintiff with notice, either dismiss or order service within a specified time frame against a Defendant who has not been served within 90 days after the complaint was filed.